## Commonwealth v. Hopkins

*George P. Williams, 3rd,* and *John C. Phillips,* Deputy Attorney General, for Commonwealth.

*Thomas D. McBride,* for defendant.

GORDON, JR., P. J., September 13, 1949.—The bill of indictment in this case contained 26 counts charging extortion by a public officer under section 318 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4318, and the jury rendered verdicts of guilty on 11 of the 26 counts, and of not guilty on the other 15 counts, four of the latter having been directed by the trial judge for lack of sufficient evidence. After we had overruled the usual motions in arrest of judgment and for a new trial, defendant appealed to the Superior Court from the judgment and sentence entered on the verdict, and this memorandum opinion is written under Rule 58 of the rules of that court.

The single, simple and plain issue of fact for the jury was whether defendant, who was Chief Assistant Fire Marshal of the City of Philadelphia, had, on the occasions specified in the bill of indictment, "taken and received" from various business men, or their representatives, certain sums of money as a "reward or fee" for officially approving numerous applications for permits for the installation, at specified locations in the City of Philadelphia, of storage tanks for high explosives, such as gasoline and oil, and burners using those substances.

Under the Act of June 4, 1901, P. L. 361, and the Municipal Ordinances (April 2, 1901, page 118; December 30, 1916, page 699; and January 4, 1935, page 4) adopted thereunder, licenses or permits for the installation of high explosive equipment in the city are granted by the mayor upon applications, which must be first approved by the fire marshal, the fees for which are paid to the city treasurer through the mayor's office (no fee whatever being payable to the marshal), and the witnesses for the Commonwealth testified directly and explicitly to having given to defendant, when they secured his official approval of their applications, sums of money averaging 600 percent of the fee required for each permit. Apart from the presentation of "character evidence", the defense consisted solely of a categorical denial by defendant of having received any money whatever from, or having been offered money by, the witnesses for the Commonwealth, as testified to by them. This was the nature and substance of the factual issue raised in each count of the bill by the conflicting evidence submitted to the jury, and upon that issue the verdicts of guilty on the 11 counts indicated above were rendered.

Counsel for defendant has notified us that he intends to raise five questions on the appeal. Of these, the first and fifth were raised by the motion in arrest of judgment, and the second, third and fourth by the motion for a new trial. These questions are stated by counsel as follows:

"1. It will be contended that under article 5, sec. 23 of the Constitution, it is mandatory that the indictment aver that the conduct of defendant was against the peace and dignity of the Commonwealth, and, therefore, the deletion of the averment, necessitated an arrest of judgment upon the indictment.

"2. It will be contended that since the Commonwealth was permitted to show a number of transactions

and that each of these transactions could properly be considered by the jury to show schemed plan, etc., it was defendant's right to show other transaction to negative schemed plan, etc.

"3. It will be contended that the essential elements of extortion were incorrectly submitted to the jury.

"4. It will be contended that defendant was entitled to have the court charge the jury as to the nature and weight to be given to accomplice testimony.

"5. It will be contended that the verdict of guilty was not a finding of all essential elements for a criminal offense in that the jury did not find that defendant's conduct was against the peace and dignity of the Commonwealth, since such averment was stricken from the indictment."

Before discussing these questions, it may be helpful to explain briefly the machinery set up by statute and city ordinance for controlling, in the interest of the public safety, the installation, use and keeping of high explosive gasolines and oils. The Act of June 8, 1911, P. L. 705, creating, in section 1, the office of fire marshal provides in section 2 for the appointment of "such a number of assistant fire marshals as the city councils may allow, one of the said assistants to be designated as chief assistant", and in section 3 provides that "in the event of a vacancy in the office of fire marshal, or during the absence or disability of that officer, the chief assistant marshal shall perform the duties of the office . . .". The regular procedure was for the applicant for a permit to present his application therefor, together with a blue print showing the location and plan of the proposed installation, to the fire marshal's office, and, after study and inspection of the location and plans by an assistant marshal, the application was then presented for approval to the fire marshal himself, or the chief assistant fire marshal, defendant, who was authorized by the act to perform the duties

of the former in his absence. It was at this point that defendant is alleged to have received the "extortion money" testified to by the Commonwealth's witnesses. The approved application was then taken to the mayor's office, where it became a formal permit by suitable endorsement, effective upon payment of the required fee, either through that office or directly to the city treasurer. After the installation was made, the law also required the fire marshal to inspect and approve the work.

Considering, first, the three questions involving the motion for a new trial, we were of opinion that the points thus raised were without merit and did not justify the granting of a new trial. With respect to the contention that the trial judge erred in refusing to permit defendant to show by persons with whom he had officially dealt at other times, and with respect to other applications for permits, that he had never solicited or received money from, or been offered anything by them, we think such refusal was fully justified by fundamental principles of evidence. The Commonwealth made no attempt to prove transactions of the same criminal nature, other than those charged in the indictment, for the purpose of indicating criminal intent, and rebutting any inference of mistake in defendant's acceptance of money in the instances covered by the bill. It confined its evidence entirely to the individual transactions charged; and the defense consisted exclusively of a simple and categorical denial that defendant was offered or accepted any money whatever in the instances testified to, without the slightest suggestion that he accepted any money mistakenly, either as to the amount, or the purpose for which it was given and received. There was no room, therefore, for injection into the case of the specious and misleading contention that defendant had not committed extortion at other times, and in his dealings with

other people. It may be that the multiplicity of the crimes specifically charged and proven against him strongly suggested the possibility that they were not the only ones of a like nature that defendant has committed, but this was merely an inevitable consequence of his repeated offending; and to show that, at other times, when he could have broken the law, he refrained from doing so, manifestly had no probative value whatever in establishing his innocence of the particular charges under investigation by the jury. If testimony of the commission of one crime has no evidential value as proof of the commission of another, a fortiori, negative evidence of good behavior in some instances is equally valueless to disprove misbehavior in others. Indeed, the reasoning underlying the inadmissibility of such testimony is closely analagous to that which excludes a previous self-serving declaration in disproof of a confession or admission against interest upon the same subject. But, if the testimony offered was to be received at all, it was collateral evidence, the admissibility of which rests in the sound discretion of the court, and in the light of the issues and proofs in this case, we see no abuse of that discretion in its exclusion by the trial judge.

With respect to the third contention, "that the essential elements of extortion were incorrectly submitted to the jury," we think it will be sufficient to say that, in our opinion, the charge contained a correct statement of the nature and the character of the crime, and the reason for the act being so drawn as to make it a criminal offense for a public officer to receive or take "any *reward* or fee to execute and do his duty and office except as is or shall be allowed by some act of assembly". The monies paid were received by defendant without any authority of law whatsoever. No special or extra service beyond the performance of defendant's usual and official duties in connection with

the applications for which the money was given to him were requested or performed by defendant. As we indicated in imposing sentence, the amounts he took in each case were so far in excess of the license fees required to be paid for the permits he approved that they could not reasonably have been viewed in the light of mere gratuities or tips, offered and accepted as payment for special or extra-official services and accommodations, had such a defense been offered.

The fourth contention to be raised on the appeal is "that the defendant was entitled to have the court charge the jury as to the nature of and weight to be given to accomplice testimony." This the court refused to do because the payment of money for approval of the permit in question clearly did not legally render the person doing so an accomplice of defendant in the crime of accepting it. The victim of an extortion has never been viewed as a party to the crime of the extortioner. If this were so, a robber could claim that the person he robbed was his accomplice, or a blackmailer that his victim was a party to his crime. The law has never recognized so fantastic a theory of *particeps criminis*, and the trial judge was not required to suggest to the jury that they might apply to the testimony of the Commonwealth's witnesses a special rule applicable to accomplices

As these are the only questions to be raised in connection with the motions for a new trial, we deem it unnecessary to discuss the conduct of the trial in other particulars. Had there been grave or reversible errors committed by the trial judge, they would no doubt have appeared among the questions to be raised on appeal. The case was, in our judgment, tried fairly and impartially. The jury displayed considerable discrimination in acquitting defendant on some of the counts and convicting him on others, and in this way revealed their thorough understanding of the evidence

and law as explained to them by the court. The verdict was inevitable under the testimony, and an acquittal on all the counts would, in our judgment, have been a miscarriage of justice.

Turning now to the two remaining questions (the first and fifth), which counsel has advised us he intends to raise on the appeal, these go to our refusal to grant defendant's motion in arrest of judgment, and appear to state, in different language, a single question, namely, whether, in view of article V, sec. 23 of the Constitution, which directs that "All prosecutions shall be carried on in the name and by the authority of the Commonwealth of Pennsylvania, and conclude 'against the peace and dignity of the same'," the action of the trial judge in granting leave to the Commonwealth, during the course of the trial, to amend the bill of indictment by striking out of each count these concluding words so far vitiated the indictment as to prevent judgment from being entered upon the verdict rendered by the jury under it. This action of the trial judge arose in the following circumstances:

The indictment as found by the grand jury, and upon which the petit jury was selected and sworn, was in proper form, each count concluding "contrary to the form of the Act of Assembly in such case made and provided and against the peace and dignity of the Commonwealth of Pennsylvania". Shortly after the trial began, however, the defendant moved the court to direct the Commonwealth to state whether it was electing to proceed against him for extortion at common law or as a public officer under section 318 of The Penal Code of June 24, 1939, P. L. 872, supra. The argument on this motion was apparently based upon the contention that the indictment was ambiguous, since its concluding language just quoted charged both common-law and statutory extortion, which are

distinct offenses, and defendant was entitled to know for which offense he was being tried. No reference was made during the argument to the constitutional requirement, and it is evident that both the trial judge and counsel inadvertently overlooked its significance, as it was not called to the attention of the court. However that may be, the trial judge declined to compel the Commonwealth to elect at that time, and indicated that he would await the development of the facts by the testimony before ruling upon the nature of the crime charged in the bill. The deputy attorney general then moved the court for leave to amend the indictment in two particulars, first, in one not relevant to the present question, and second, by striking out of each count the concluding words, "against the peace and dignity of the Commonwealth". In reply, counsel for defendant objected to the first of the proposed amendments, but stated to the court that, although he could not agree, he had no objection to the striking out of those words. The court thereupon gave the Commonwealth leave to amend the indictment in the manner requested.

Notwithstanding the leave to amend thus granted by the court, the amendment was never actually made. The trial proceeded, and the verdict was rendered by the jury upon an unaltered indictment, which was proper in every respect, and complied with the constitutional requirement as to its form. It was upon such an indictment that the sentence was imposed. This would seem to completely dispose of the question.

Defendant contended, however, that the granting of leave to amend was equivalent to an actual amendment, and hence, that sentence could not be imposed upon a constitutionally defective bill. With this contention we cannot agree. It not only overlooks the reality, that the indictment was not in fact amended, but also ignores the formal character of the language

in question (see Commonwealth v. Paxton, 14 Phila. 665; Commonwealth ex rel. Lieberman v. Smith, 152 Superior Ct. 1), and the well settled rule that purely formal defects in a pleading are amendable at any time before final judgment, unless defendant would be thereby deprived, as plainly is not the case here, of some substantive right. Acting under this rule we eliminated all possible question of the effect of the unexecuted leave to amend granted by the trial judge by making a formal order vacating and revoking that action before overruling the motion in arrest of judgment and entering final judgment on the verdict. This restored the indictment to its original and proper form, if, indeed, it had been technically amended at all, and rendered the sentence imposed valid and effective.

For another and equally conclusive reason, we think the motion to arrest judgment was properly refused. Section 11 of the Criminal Procedure Act of March 31, 1860, P. L. 427, requires objections to indictments for formal defects to be made prior to the entry of a plea. It is true that defendant could not have done this in the present case, since leave to amend was not asked until after the trial had started. Nevertheless, when it was requested, defendant expressly stated through his counsel that he had no objection to the amendment being made, and thereby consented to it. It was his duty either to interpose an objection at that time, or, immediately after the leave was granted, to call the constitutional defect thereby created to the attention of the court, and put an end to the trial by appropriate action, such as objecting to the further introduction of testimony by the Commonwealth and moving for his immediate discharge. By not doing so, and silently permitting the trial to proceed under an indictment defendant believed to be defective in form, we think he estopped himself from belatedly raising the question by a motion in arrest of judgment. It will not

do to say, as suggested by counsel at the argument, that "a defendant is not required to prevent the Commonwealth from cutting its own throat". A judicial trial is not intended primarily to be a mere battle of wits. It is a proceeding for the working out of substantial justice, and, while cleverness and technicality may play their due part in a trial, they must never be permitted to obstruct the ultimate attainment of that end.

It would be difficult to conceive of a sheerer technicality than the one here advanced by defendant to prevent judgment against him. The concluding words of an indictment bear as little substantial relation to the charge as the formal words "yours truly" bear to the body of a letter. Their use was prescribed in the first constitution adopted after the Revolution in order to emphasize the sovereignty of the new Commonwealth, and to provide a uniform and authoritative substitute for the common-law form of conclusion, "against the peace and dignity of the King," previously in use in the colony. They must be used because the Constitution itself so requires, but to elevate them to the dignity of a matter of substance, which cannot be amended without the agreement of the grand jury that found the bill, would invest them with an importance wholly foreign to their true nature and purpose, and provide another avenue for the escape of the guilty.

In the trial, which was, in our judgment, fair and free from substantial error, defendant's guilt was thoroughly established; and it was for the foregoing reasons that we refused the motions for a new trial and in arrest of judgment.